Thank you again for the opportunity to speak on these issues today, as well as the generous allotment of time that the panel is giving all parties. We'll try to stick more to the traditional times on this case than the next ones, and we will take a recess after this argument. The good news about this particular appeal, it's a little bit more straightforward on legal issues as opposed to factual issues of funds. This is a case that was initially filed by Mr. Clinton as the plaintiff against the Hendricks & Lewis law firm here in the Western District of Washington for claims related to their prior legal representation. Obviously, the judgments and the amount of fees asserted to be owed by Mr. Clinton culminated from prior legal representation by Hendricks & Lewis. The claims involved a standard malpractice claim under Washington law, as well as fraudulent inducement and negligent misrepresentation. The District Court dismissed the claims under fraudulent inducement and negligent misrepresentation under Rule 12b-6 on November 7, 2011, and then dismissed Mr. Clinton's remaining claims related to malpractice on April 30, 2012. I'd like to make a point in this appeal, which I should have done when I started speaking, and I apologize, that opposing counsel in this case, Mr. Umloff and I, have discussed the fact that there's a third issue that's briefed in this appeal, and that is the court's denial of dismissal of the Hendricks & Lewis-Conner claims. However, by virtue of the procedural aspects in the Western District of Washington, those claims have been morphed into what we're going to talk about today as the last appeal on today's docket. So I would say on behalf of both parties, we each reserve all rights on this, but it might just be more efficient to talk about those claims. They're under the other case. Correct. They were severed. And I should have mentioned that when I first started speaking. Let me get you to the heart of a couple of these substantive issues. So what's wrong with the district court dismissing negligent misrepresentation or fraudulent inducement claims on race judicata grounds that they could have been raised in the initial arbitration? Unlike the prior appeal that we talked about where I was the counsel before Judge Wright, I was not Mr. Clinton's counsel in any of the arbitration proceedings in Washington. So this is a matter that I've also been able to get acquainted from the limited amount of materials that exist. And the position that we take that race judicata does not apply to the dismissal of those two claims is because the arbitration provision in Section 7 of the engagement agreement and retainer agreement between the law firm and Hendricks & Lewis on its face stated that it was limited to claims for fees or costs, no other types of claims, and that the fraudulent inducement and negligent misrepresentation claims would sound in tort law and were not a matter of a fee dispute. So why would that kind of claim not be permissibly made in an arbitration on fees to say that the contract was invalid or void, so they can't recover fees? Because the arbitration provision should be limited to its scope, which was just for a fee dispute, what some would call services were rendered, services were invoiced like an account stated. We would take the sense that it could not have been brought under the arbitration provision. Arbitration could not have been compelled for those claims. It would be our position that arbitration could not have been compelled for those claims because it wasn't about a dispute over the fees or the costs that race judicata should not apply. But once there was a claim for the fees, why couldn't those claims have been asserted defensively in a counterclaim in response? In a counterclaim before the arbitration panel? Well, as a defense, saying the fees claim is invalid because the underlying contract is not enforceable because of fraudulent inducement or negligence. That's right. No, it would be our position that it would have been possible to have done that. It would have been more efficient, but they were not required to be. And then, therefore, the claims, as they stand in court, should continue to stand. It was not a fee dispute. This was the argument that was made to Judge Lasnik? This is essentially the same argument that was made to Judge Lasnik, precisely. And on this particular one, unlike the issues before Judge Wright, we would submit that these would be de novo review of the dismissal of the 12B6 claims. Because we're interpreting Paragraph 7 of the agreement? Yes. Yes, Your Honor. Which was, of course, drafted by Henderson-Lewis. I think getting more to the heart of this appeal, which is going to be the April 30, 2012 dismissal of Clinton's malpractice claims. Judge Lasnik, this is really kind of a choice of law and statute of limitations type of argument. There's quite a bit of legal analysis here that I think both parties addressed well in the briefs, different positions, of course, but the legal issues are clear. Judge Lasnik ruled that it was California law, rather than Washington State law, that should apply to the malpractice claim. As well as Judicial Estoppel saying that California law and its one-year statute of limitations, as opposed to Washington law and its three-year statute of limitations for legal malpractice, should apply. It was submitted that the panel reviews these choice of law and statute of limitation questions, again, de novo. What we have here, again, is a problem created for Mr. Clinton by virtue of the prior arbitration. Well, he didn't participate in the prior arbitration. True. And he participated just briefly in the proceeding in front of Judge Kuhnhauer, right? To reduce the arbitration award to judgment? Yes. He argued there that Washington law applied, right? That's my understanding. That's my understanding. So that's part of the understanding that there has not been an inconsistency. And what Judge Lasnik seemed to focus on was the fact that there was a representation of Mr. Clinton in the Central District of California involved in this Universal Music case. And, of course, that Universal Music case also was the case before Judge Gutierrez, which is one of the cases that settled and Hendrick and Lewis put the lien on for the funds. So we would say that this is a situation where Mr. Clinton hired and retained a legal professional law firm in the state of Washington. As Ms. Hendrick said, it's a two-member law firm. According to their website, there's more attorneys there. But they are here. Mr. Clinton signed the engagement letter in Seattle, Washington. It would seem that attorneys practicing in Washington or attorneys practicing in Michigan should be amenable and susceptible to the rules of professional conduct and malpractice. So maybe we're miscommunicating. I understood that it was. Maybe I've got this wrong. I understood that it was Mr. Clinton's position in front of Judge Kunauer that Washington's conflict of law provision dictated that California law should apply. Do I have that wrong? No, no. That is correct. I don't want to misspeak. But it was only in the context of the arbitration provision, the choice of the arbitration provision. And as set forth in the briefs, it's also in that Judge Kunauer said that it was the Federal Arbitration Act that preempted this choice of law, of California law. So it's hardly a question. It's Mr. Clinton's position that he did not prevail on that position of asserting that California law applied. Well, I understand your position is that this is a question of law that we should review de novo, regardless of the prior ruling. I think that's what you're arguing. But opposing counsel has made noises about whether or not judicial estoppel is appropriate here because your client has changed his position. Do you want to address that? Yeah. And it's set forth in the brief, and it is confusing, and I will try to kind of summarize it as best as I can, is that the position that was taken by Mr. Clinton and his prior counsel regarding the arbitration provision and the application of California law was only in the context of Section 7, limited to arbitration. It was not an admission about anything about what the substantive law would apply to any type of claim. It's a nuanced argument. I understand completely. But it can be parsed and show a distinction and a difference between the treatment of the arbitration provision versus what the substantive law was. And then, again, I reiterate that even Judge Cunar, arguably, didn't adopt Mr. Clinton's position because instead of going to either state law, he said it's preempted by federal law. So it's hard to say that other element of judicial estoppel is saying, did you prevail on that? You're having your cake and eating it too. Mr. Clinton didn't have his cake in the arbitration. He got a sizable judgment against him. When we talk about this conflict of law principles between the various state laws, there's a two-step, the most significant relationship test, where we weigh the content in each state and the court must also consider the interests of public policy of each state. And it's on this point that I want to emphasize, and then I want to reserve a little bit of time for rebuttal on this, but it is definitely in the interest of public policy of residents of Washington, of clients of attorneys and law firms in Washington, to have a reasonable reliance that the malpractice laws and other rules of professional conduct and professional responsibility applies to the attorneys that they hire and retain in the state of Washington. With respect to the argument that the central work or the largest amount of work that Hendricks and Lewis did for Mr. Clinton, I would cite to the current Hendricks and Lewis website as of today, saying that they worked with numerous, they worked on numerous matters for Mr. Clinton in different states, not just the universal case in California. So it's a position with de novo review with the fact that an attorney in Washington State was hired and retained should not escape review of their conduct in the malpractice case, in the malpractice instance, simply because another state where they did perform services has a more friendly defensive posture for the subject law firm. It is submitted that this, that Hendricks and Lewis were not saying that they committed malpractice. That would still be for Mr. Clinton to prove on the merits, but certainly the public policy would weigh in favor. There's a reason why there's a prelimitation. I think you're not time barred on that now. Do you want to reserve some time? Yes, Your Honor. I'd like to reserve my remaining time for rebuttal. Thank you. What was the argument about the arbitration clause, paragraph 7, made to the district court to Judge Lasnik? If you can't find it immediately, can you cite me to it when you come back on your rebuttal? Yes. I know it was in the brief in opposition to the Rule 12b-6 motion, but I will look for it. Thank you. Okay. We'll hear from O'Pelley. Good morning. Roy Umlauf on behalf of Hendricks and Lewis and also Mr. Lewis individually as well. Thank you. I think you hit the nail on the head with pointing out what this case is really about, and it's really about race judicata. And in terms of what we have here is a collateral attack on a judgment that was entered four years ago today. I mean, an arbitration award that was decided four years ago today, and that shouldn't really be allowed. And what we have here is a situation where there was a fee dispute. And as you pointed out, if there's any objection to the contract, that should have been raised at the very beginning when they had the arbitration. And that was – it's a case of – I'm curious. I'm trying to figure out how it would have come up in the – who sought the arbitration? My clients sought the arbitration, and the arbitration went forward. And you've seen in the big record – Okay. So you framed the issues to be arbitrated. And the issues related to the services agreement that was signed. So it was an issue related to what is owed under the services agreement. Okay. And so how are you suggesting that fees and costs of Paragraph 7 would have encompassed legal malpractice and fraud on the court? Okay. Well, in terms of the fraudulent inducement, the first order is fraudulent inducement and misrepresentation. They said that our clients induced them to enter into that contract. Into the fee agreement itself. The fee agreement, right. And so their argument is that it's invalid. And so inherent in that very first arbitration decision, you have to first decide that the contract's valid. You can't go any – you can't – Right. But the harder question is the one that Judge Fischer is asking about the malpractice claim. Well, sure. And I think – The district court didn't apply res judicata. The district court did not. Correct. And you argued he should. You made the same argument. Correct. As to all three claims. And the district court declined to go there. Right. And we think you can go there as well, and you can affirm on any grounds. That's what Judge Fischer's asking. Okay. How would that have come up in the arbitration? As a compulsory counterclaim. Right. And, in fact, you asked about, you know, did he participate. He did. And if you look at footnote three in our materials, the court actually made – or the arbitrators actually made findings that Mr. Clinton made a conscious decision not to participate. You said he did, but he didn't participate in the arbitration proceeding, right? Well, he participated – he had people that were appearing on his behalf, and then he did file a motion. And that's SCR 112. If you look at footnote three in our brief, the court actually found that he made a knowing and deliberate decision to not further participate. He filed a motion to have it continued, and then, you're right, he did not participate at the time of the arbitration. But, anyway, I think it seems – strikes me as a side issue at this point. He made a choice to participate or not participate. Exactly. But getting back to the point, which is? Which is? I think your answer is it should have been a compulsory counterclaim. It would have been. And that's where I think if you look at the body of case law dealing with bankruptcy, when we have fee disputes in bankruptcy, the courts have held that, you know, inherent in deciding whether or not the fees are reasonable, whether the services are reasonable, you have to decide – What's the strongest case law support you have for your position that he ought to have raised it, you know, was required to raise it in the arbitration? And that's on page 50 of our brief, if you look at the cases that are cited in there. And I think one of the best cases is that Jeffers case, which is cited at page 50. And that was a case where there was an attorney dispute, there was a fee dispute, and that was decided by default judgment, no hearing. And the court in that case said it should have been a compulsory counterclaim, and they said it's too late, you can't bring it. It should have been a compulsory counterclaim. And that's why I think Rule 8 and Rule 13 really support the idea of res judicata. The whole idea is bring it now or forever hold your peace. I mean, that's really the res judicata idea is you need to bring it at the time. And he even conceded up here an oral argument. He said it was possible and would have been more efficient to bring it at that time. And, in fact, in their brief that they filed in the arbitration to try to get a continuance, they said we have, I'll give you the quote, Mr. Clinton will have numerous counterclaims that are material to the arbitration. So for them to say they weren't considering it, in fact, they represented to the arbitrators they had counterclaims. And in the record it's clear that throughout the procedures in the arbitration they were given opportunities to make counterclaims. There were deadlines. There were dates that they completely ignored and made a decision to not participate. So I think in terms of res judicata, you know, the first order in terms of negligent misrepresentation and fraud and inducement, those both relate to the contract. That one is clear. And if you look at you're asking for good case law in the first order, the Riddell decision from the Seventh Circuit, I think, is very strong where the court said that you cannot bring up a collateral attack on fraud and the inducement to the contract. So I think the Riddell decision, I think, is very strong. We've cited multiple, multiple cases. What's your strongest Ninth Circuit authority? Well, there isn't a case exactly on point with this. The Ninth Circuit cases deal with the issue of could you have brought it up, and I think that's the Bear Stearns case talks about that. That case is different because in that case, the court had carved out before it ever went to arbitration, here's the scope of the arbitration. Here we went straight to arbitration, and the case law is clear both from the U.S. Supreme Court and from the Ninth Circuit that the arbitrator is the one to make those decisions. We've given very broad. Those decisions meaning the scope of the arbitration? The scope of the arbitration. I mean, if the court hasn't made that decision, then the arbitrator makes that. Then the arbitrator is given very free reign to make decisions about what's going to be considered. I understand, but that's a different point because your point is really that it had to be compulsory, and I don't think there is a Ninth Circuit authority on that point, which is I think you've acknowledged that. You're correct. You're absolutely correct. But the Seventh Circuit, I think, argument in the decision is very, I think, very persuasive, and it makes sense. It makes sense. To get to the grounds on which Judge Lasnik relied, could you turn to that? On the malpractice claim. So in terms of, well, first of all, on the malpractice claim on the statute of limitations, judicial estoppel is not de novo review. It is abuse of discretion. So in terms of the issue of whether the court should apply judicial estoppel, that review is not de novo. I understand, counsel, but I was trying to ask a different question. Okay. I'm trying to ask the question about the grounds upon which Judge Lasnik relied. He decided the most significant relation to the specific malpractice allegations asserted by Clinton. Okay, and that's where I think it's important. I handed out a little timeline to kind of give you an idea of how long our client represented folks. And I think what we really need to focus on, what are the claims of malpractice? Okay, because that's really the context. Because they talk about, well, we've represented Mr. Clinton in different states, and that's true. Michigan, there were cases in Michigan. There were cases in Tennessee. There were other places. But the allegations of malpractice is what Judge Lasnik looked at. What are the claims of malpractice? And let's focus on those. And those claims all relate to things that were going on in California. And in terms of what's going on in California, that was the, they were arguing that our clients mishandled the tolling agreement under California law. Again, California-related. They talked about our clients should have made a fraud claim in the UMG audit case. That was a case pending in California. So another thing they alleged, that we should have sued Charlie Records in California. These all have to do with standard of care of how a lawyer would practice in California. So regardless of whether you're pro hoc or where you're based with the Internet or whatever, the key issue is, what is the issue? What is the claim of malpractice? And the claim of malpractice relates to California litigation. Those are the specific, they didn't sue our clients relating to anything in Michigan. They didn't sue our clients relating to anything in Tennessee. They sued our clients relating specifically to California litigation. That's why Judge Lasnik is absolutely correct in applying California law to California litigation and allegations, which our client denies is malpractice. But again, in terms of these allegations, they're all related to California litigation. So then if you look at, okay, the significant context with California, it's all about California litigation. That's why Judge Lasnik applied California statute of limitations to California litigation. If you look at the judicial estoppel issue, under judicial estoppel, you're absolutely correct that before Judge Kuhnauer, they argued that California law should apply. And Judge Kuhnauer adopted that in his statement in the ruling. He said that California law had the most significant context. So Judge Lasnik said, and again, it's a discretionary, they have to show abusive discretion that Judge Lasnik abused his discretion in following Judge Kuhnauer. I mean, that's the standard they have to prove. And they didn't meet that. They cite no cases that overturn that. They cite no cases when you ask about, well, what case is on point? They cite no cases and actually take no issue in any of their briefing regarding the Riddell decision. They take absolutely no, there's no cases about our well-reasoned decisions on page 50 about the bankruptcy law dealing with services and what's reasonable and what should be determined. They don't take any issue with those cases. So I think if you look at, you know, what is this case really about? I think it's really just a case about them wanting to collaterally attack that arbitration decision. And in that arbitration decision, they had an opportunity, as they even said, it would have been more efficient and it would have made, and they could have done it. And, in fact, they told the arbitrators when they asked for a continuance that they were going to bring counterclaims. They knew there were counterclaims. And it's only after collection proceedings started that all of a sudden now they fabricated this lawsuit and brought this claim to collaterally attack a judgment on an arbitration award that was entered four years ago today. I don't know if you have any other questions. I have no questions, Judge Fischer. No questions. Thank you. So I was kind of going a little faster. I just want to make sure I made all my points. Look through your notes. You've still got a little time. So I think I made the point about the abuse of discretion that, again, a judicial estoppel is a different standard than de novo review. And I think it's also important that they concede that if California law applies, there's no dispute that the one-year statute of limitations would bar the claims. Thank you. Thank you. Okay. Mr. Thinnish gets some rebuttal time. Thank you very much. Very, very briefly, we've established that on the issue that there is no guiding Ninth Circuit case on this, that we're borrowing a case from the Bankruptcy Court. And it is something where we need to respond to this idea that Mr. Clinton fabricated this particular case. That is not the factual background at all. But isn't there a stronger argument that it's just too late? It's an argument. But, again, using Washington law and the Washington malpractice law would suggest otherwise, that they provided a three-year statute of limitations enacted by the legislature. That's three years for the claim. I do agree that, as Mr. Lumlauf said, that if California law does apply, there's no question that there's a one-year statute of limitations. It's just the point is that this was a law firm. So is it true that all the malpractice claims related to conduct in California litigation? I think that those allegations in the complaint centrally relate to California, but by no means would discovery in that case be limited to only one subset of representation that the Hendrickson-Lewis law firm had. By no means does the complaint, when reviewed de novo, is it limited on its face to simply conduct in the state of California. I concede that I'm out of time, and I thank you again. Well, I thank you both sides. We'll stipulate. Both sides have occasionally used harsh language, but we understand it's being used in the sense of advocacy. So we don't take it all that seriously. But we're thinking about the case seriously. So we'll now take a recess. This case is submitted.
judges: Fisher, Gould, Christen